24-1447 AG Dedic v. Florida Federal Global Project. And we'll give everyone a minute to come up and get settled at the council table. Thank you. Mr. Mermel? Yes. I understand you would like to reserve two minutes for rebuttal. Is that right? That is correct, Judge. You may proceed. Good morning, judges, and may it please the Court. My name is Clifford Mermel, and I represent the petitioner, Mr. Arifat Dedic, who is the claimant in this Defense-Based Act, or DBA, case. This case presents a fundamental legal error. A.L.J. Davis' decision rests entirely on the opinion of a non-examining physician, contrary to decades of precedent holding that such opinions cannot constitute substantial evidence, especially when they contradict treating physicians' conclusions supported by objective medical evidence. This is a case of first impression, as no published DBA or Longshore case in the 98 years since the enactment of these laws has allowed a denial of benefits based solely on the opinion of a non-examining physician. But these cases are very like the Social Security disability cases, aren't they? Well — And aren't we pretty well bound to follow what we do in those cases in a case like this? That is, the legal issues are basically the same, aren't they? They're very similar, actually, Judge. It's a very good question. And one of the main rules in the Longshore arena is called the treating physician rule. It comes directly from a Social Security disability case. And what it stands for is the proposition that the treating physician deserves the greatest weight, and the examining physician — Well, we used to give — this Court was the one that developed the treating physician rule. And for many years, that was absolutely dominant. Congress cut us back on that, and many precedents have now gone the other way. I'm old enough to be still one of the ones linked to that. But the more recent cases have not gone your way, have they? I don't believe that they've been overruled. I believe that the treating physician rule is still good law and — Well, not in Social Security for new cases, right? I mean, that was thrown out the window by new regulations, right? But I'm talking about in Longshore and DBA cases. Right, right. I just want to make sure because we're — Correct. — mentioning both. I think you're correct, Judge. So in this case, I'm relying upon Rainey v. Director, which is a case directly from this Court, and it holds that the administrative law judge opinion must be supported by substantial evidence, must be rational, and must be in accordance with the law. A.L.J. Davis's opinion fails all three prongs of the Rainey test. It is not rational to credit a physiatrist who never examined the patient over an authorized treating orthopedic spine surgeon who documented objective pathology and functional impairment for nearly two years. But that's not all there was to this case. I mean, the symptoms that your client complained about were, to a good measure, subjective ones. I have to respectfully disagree with you, Judge. Anyway, your client testified at the hearing concerning his issues, and the A.L.J. didn't credit the testimony. We're not relying solely upon his testimony. And I understand that a judge gets to judge the credibility, and I'm not even going into that because we have objective medical evidence in the form of MRI and EMGs. There is nothing — that's the gold standard that documents whether or not a person has injured. This man has a herniated — Can I ask a question? Yes, sir. Is there clear evidence of some orthopedic damage? Absolutely, Judge. MRI — I will ask that same question of the other side, because there's some back and forth, but in the end, do we concede that there is some, not necessarily much, but there is some orthopedic damage? Absolutely. The MRI shows a large herniated disc pressing on this man's nerves and an EMG that shows a radicular component going into his right leg. This is a man that worked for nine and a half years as a tow truck driver while living on the base in Bagram Air Force, the Bagram Air Force Base in Afghanistan. He never had a back complaint, never had an injury, and he slipped and fell directly onto his back and had sharp pain in his back radiating down into his leg. You know, he sees an orthopedic surgeon who does MRIs and EMGs and confirms objectively that he has these injuries. Now, his case was — But I thought that there was some contradiction between the results of the MRI and the EMG. Well, that's based upon the opinion of the non-examining physiatrist. Well, right. I mean, as opposed to me. I mean, we have someone who is in the field looking at tests. I mean, if somebody does a test, then the doctor looks at the results of the test, right? Like a radiologist, right? Right. The radiologist isn't looking right into your body. They're looking at the X-ray film or whatever. Right. So somebody is looking at this afterwards. If someone looks afterwards and says, look, I'm looking at the film, and there's nothing wrong with your femur, then someone later can come along and look at the film and say, what are you talking about? There's a huge break right there. I'm looking at the same film. So when someone says, well, you looked at the EMG, you looked at the MRI, but they weren't a treating physician, I guess I don't quite see the point there. Because if you have a doctor who is capable of looking at test results and saying this is what they mean, I don't understand how that is not actual meaningful evidence in the record. Well, okay. The point, I believe, is that when it comes to a back injury, you cannot just look at the MRI and the objective evidence. You have to examine the patient. Well, not necessarily. Okay. I mean, a little bit of everything there. But I mean, I thought one of the issues was, wasn't, I'm going to pronounce it wrong, doctor with a K, Kochenich? Kochenich. That's better than my pronunciation. But I thought that he did an examination of your client and he found that there was no objective medical evidence supporting a continuing orthopedic injury. Well. A treating physician. Let me read to you what he actually found in his report.  Because I think that's an excellent point. This is in. Good. I want to hear that. Please read it. Yes. Yes. This is the supplemental appendix. Oh, no, this is in my appendix, A182. 182. Yes. Hang on, let me just pull that up. An examination of the lumbar spine. Okay. This is very important. The chief complaints were low back pain going into the right leg. When he examined the lumbar spine, he found that it was stiff and tender. Movement in the back was limited. And the patient complained of stiffness and pain in the lumbar muscles. Palpation of the lower back was especially painful. And then if you go into the next page, the flexion of the back was around 20 degrees. Patient could only reach to the middle of his thigh with his hands. The patient's back extension was limited by up to 10 degrees. Range of motion on the left side was limited. Range of motion on the right side was limited. And the right leg was very painful. An attempt of motion in either the hip or the knee. A straight leg raising test was pseudopositive on the left. And on the right side, a straight leg raising test could not even be done due to the amount of pain this man was in. So what do you do about page 186, which I think is a continuation of that same examination, right? Correct. The same doctor. And the first paragraph on page 186 is thoroughly examining the patient, the patient's history and all the diagnostic workup. I cannot recommend any new treatments that could have a positive effect on his problems. While he may feel he is unable to do any productive work and may continue to do so. Objectively, I cannot support that. Again, from an orthopedic point of view. Very good point, Judge. What that is saying there, it doesn't say that this man is able to return to work full duty. What it says is that he doesn't agree that he's completely unable to work at all. You see? What it says is that there's no objective evidence in the record to support this man's complaints about pain and discomfort and so forth. And isn't an adjudicator entitled to engage that contradiction? Yes, an adjudicator is entitled to. But what is here is we're not talking about a judge choosing between a doctor who says that a man cannot go back to work and another doctor that says he can. Let me try to put what you are saying, because it is what I will ask the other side. Yes, sir. There is evidence that this man is not as badly off as one might be. But where is there evidence that he can go back to do the job that he did before, which is a particularly difficult job, that of being a truck driver? Correct. And that is the question I will ask the other side. The only evidence of that comes from the non-examining physiatrist. And this physiatrist is paid $1,500 per hour, and he does 240 of these reports each year for an insurance company. So you're correct to point that out, because what I was getting ready to say is if there were two examining physicians in the case, the judge would have the right to pick one or the other. But when you have a non-examining physician against an examining physician, he is not allowed to select the opinion of the non-examining physician because the non-examining physician has no basis for his opinion. But there's also Dr. – I'm going to call him Dr. K, as I mispronounce his name. We're going back to page 185. That's fine. And he did examine. He's an orthopedic surgeon, right?  And he did examine your client. And he said, I cannot relate his current state of affairs due to a fall at work in Afghanistan. He keeps talking about, in his view, the lack of any objective evidence that suggests that any of the things that your client is complaining about are really happening or have any physiological source or are linked in any way to a fall at work. No, I think what – He says, I cannot relate his current state of affairs due to a fall at work in Afghanistan. Well, I think what he's – he does relate the fall to a back injury. He calls it a sprain strain. And he doesn't relate the herniated disc condition to – but you have to also remember, he says in his report that he cannot finalize his opinion until he reviews the MRI and EMGs. And those were either never provided to him or they were provided to him and he agreed with the authorized treating orthopedic spine surgeon that this man is disabled. Because my opposing counsel didn't even call this doctor as a witness. He didn't take his deposition. He just let it go. And that is very important to think about. Why didn't this doctor get to see the EMGs and MRIs? Okay. I think we have your argument. You've reserved two minutes.  So if there's anything you want to add, you can do that at the end when we see you again. Okay. Why don't we hear from counsel for the appellee attorney – is it Karpousis? Yes, Your Honor. Thank you for your time. Thank you. Your Honors, may it please the Court. My name is John Karpousis. With me is Michael DeHart from my office. We're with Freehill Hogan Maher. We have the privilege of representing the appellees in this case. There are – there is an unassailable legal maxim that exists under the Longshore Act as extended through the DBA, through the Defense-Based Act, and that is that it is the ALJ that has the discretion to evaluate the credibility of a claimant and to arrive at his own independent judgment. And the same is true with respect to medical findings of – and medical evidence in the case. Neither – with all due respect, neither Your Honors nor the Board can substitute your judgment for that of the ALJs. The ALJ has – is exclusively entitled to assess –  Yes, Your Honor. I'm with you on all that. Right. What I want to know is, is there – do you concede that the evidence here shows some orthopedic damage? How much, I don't know, but that there is undisputed evidence of some orthopedic damage. Your Honor, I don't think the appellees in this case have ever taken the position that there wasn't an injury. The contest on the orthopedic claim, Your Honor, is the nature and extent of the injury. Okay. If you concede that there was an injury, where has the ALJ ever specifically discussed whether this injury allows him to go back to doing the truck driving as against other activities? He – he does it, Your Honor. He does. He denies the claim in its entirety because part of this – and I'm glad Your Honor brings this up – is that an ALJ can dismiss a claim solely based on the claimant's credibility. And what is completely absent from my opposition's request –  I am – I am back. If you concede that this – there was an orthopedic injury, whether he is believable or not as to how serious or not it is, where in the record is there an examination by the ALJ that the orthopedic injury, however small it was, allows him to be a truck driver? Because that's the test.  He has to be able to go back to doing his original job. And he might be able to do any number of things, but that's what I find missing in this record. It's a very small thing, and it depends on there being a concession, which you just made, that there was an injury. Well – If that is so, the ALJ should. And then he can. And when he goes back, he may be able to say, of course, he can be a truck driver. But that's what I found missing. If your Honor examines, I believe it's at, under Judge Davis's findings, at 8214 through 8216. And then again, the board, the Benefits Review Board, denied – they said the claim had failed to establish that the condition caused any economic harm. Any economic harm. Again, that goes to nature and extent, Your Honor. That's a different concept from injury. I think Your Honor is confusing, respectfully. I think Your Honor is confusing the concept of injury, which we acknowledge he had, with nature and extent, which he does not have. He does not have a continuing disability. And that's, Your Honor, at 8220 through 8221. Yes, Your Honor. On that point, just clarifying, we have a burden-shifting framework under the statute. We do. And it's my understanding that at the first stage, the claimant needs to make a prima facie case. Right. And my understanding is that the prima facie case requires the claimant not only to show an injury, but also the inability to work at the pre-injury job. So it's not just that he shows an injury, thereby satisfying the prima facie case, whereupon the burden shifts to prove – I mean, the employer to prove that there wasn't a total disability. But he has more on his prima facie case, right? Is to show injury and, as you're saying, the nature and extent. And that burden is featherweight at the initial, right, at the initial hearing, at the initial stage, I should say. He can walk in and say, there's something wrong with my human frame. So concede that he has met that burden. Judge, we've never not conceded with respect to the orthopedic claim that he didn't have an injury. The question lies in nature and extent. And that's where the judges, the ALJs, who've been – what Your Honor was talking about before, the credibility determination. Sorry, Your Honor. Counsel. Yes, sir. I don't think you understood the presiding judge's question. Has he made a prima facie case that he has an injury which would prima facie, just at this very light level, keep him from doing his previous job? Yes. I have a question that, presiding judge, do you concede that he has made that? Yes, as to the injury. No, as to the nature and extent. So, just to break that down, and this is what I thought the ALJ found, that the claimant had not satisfied his prima facie case, all of it. Maybe a hit piece of it. All of it. But not all of it. Exactly right. So we never got, in the ALJ's mind, to the second step, which would have been the employer demonstrating the available of other job opportunities in the area and all that.  We never got that. He focused, Your Honor, exactly. He focused on Dr. Kachansik's examination, along with Dr. Obermiller's testimony, that said, objectively, and the claimant's lack of credibility. He took all three of those things, which is within his complete province to do, as Your Honor pointed out earlier. That is exactly what he's supposed to do, allowed to do, and ALJs on a daily basis all over the country do. Yes, Your Honor. Counsel, again, I think we are confusing what was decided about a prima facie case and then what was decided after. And I'm still confused as to whether you are conceding that he gave enough so that the burden then shifts. That is, that he gave enough that he was injured in a way that would keep him from doing this job. The extent and whatever then to be decided. Now, if that is so and the burden shifts, then it becomes up to the ALJ to examine all of these things and say, on the basis of these different medical people, that he could, in fact, do his job. Is that what we're doing? Your Honor, that is what Judge Davis did, in essence, Your Honor. He essentially says there is a concession that there is an injury here. It's never been disputed. But the nature and extent has been contested from day one. Is there a prima facie case? For injury? Yes. No, no, no, no. For disability? Hang on. My understanding is that there is a burden-shifting framework. Right. And that the prima facie case that must be demonstrated by the claimant is that of total disability. Now, it seems like you're saying there's a prima facie case as to an injury, but that's not a standard, right? Is it? Well, there is. That's the first element, Your Honor. Hang on. I thought the prima facie case, it says here, the claimant must show that he cannot return to his regular or usual work due to his work-related injury. Right? That's prima facie case is that of total disability. Right. And I thought your argument was he hadn't, that ALJ found he hadn't satisfied that prima facie case. Yeah. I thought it's as simple as that. I agree with you, Your Honor, except for the fact that there was a small period of temporary total disability that we have to concede because he wasn't working while he was treating at the very beginning. But that's not what we're fighting about. That's not what we're fighting about, Your Honor. You're 100 percent right, Your Honor. And, again, I really do want to impress upon this panel that completely absent from the appellant's presentation is any discussion regarding the claimant's credibility. And I think, Your Honor. I'm sorry. You're continually getting beside the point. The point is a very simple one. Has he made out a prima facie case that he cannot do his current job? If he has, then the burden shifts to the other side to show that. And that's where I have a problem because if we are there, and I'm not saying that we are there, but if we are there, I never see the ALJ discussing the particular job. So the question is, has he made out a prima facie case with all the doubts of which is, as you've said, the lightest of burdens. If he's done that, then we turn to the other side. And that's what I'd like you to show me. I think it's implicit in the ALJ's initial decision, Your Honor, the ALJ Morris's initial decision, because — I don't like implicit decisions. I understand. I'm sorry. I like explicit decisions. He explicitly found him not to be credible, and he explicitly found him that he could go back to work relying on two medical doctors in the record. And, Your Honor, respectfully — That he could go back to work is clearly established. Could he go back to work diving a trunk? Yes, Your Honor. Yes. Yes. I believe that's in the record. Absolutely. Give us a page. If Your Honor would look at — You know, I'm perfectly ready to believe that he can do that. But I want to find that in the record. Sorry, Your Honor. I'm just taking one second. 215. A215, Your Honor. Which paragraph? I don't have the paragraph in front of me. But that's where he discusses — he discusses Obermiller's findings over all the other physicians. All right. Well, we can read 215 for ourselves. We've got that. Why don't we hear from Mr. Murnell, unless there are other questions right now? All right. Let me hear from appellants. You have two minutes, Mr. Murnell. Thank you, Judge. I want to address what you have been discussing, and that is that this claimant did establish a prima facie case of total disability. Can I back up a second? Just in terms of understanding what the ALJ held. That is what the ALJ held. He held that he had established a prima facie case? Yes, he did. And then he — Because when I read, hang on, 214 to 216, I'm looking at 216. Because claimant has not established a prima facie case of total disability, I need not determine the other steps. So I don't understand you when you say that the ALJ found that your claim did satisfy a prima facie case, given what I just read out loud. I don't — unfortunately, I don't have the order in front of me, but — I'm looking at page 216. Okay. The appendix, you don't have that there. No, but the point — Let me read it out loud. Sure. Because claimant has not established a prima facie case of total disability, I need not determine whether employer has demonstrated the availability of suitable alternative employment or whether claimant diligently sought such employment. So based on what I just read, are you still telling me that the ALJ found that your client did prove a prima facie case of total disability? Not only am I telling you that, but the opposing counsel conceded it.  I'm — I would have to review the actual order, and I believe that he did find that there was a total — a prima facie case. Do you have a page citation that contradicts or explains what I just read on page 216? Not only that, Judge, but I want to say that — Do you have a page citation somewhere I can read in the record where it says the opposite?  No, I do not have that. I'm sorry. But not — What would be the nature of the document that we would find for ourselves with the page number? It would be in the judge's decision. That same one that's two pages long?  Okay. But I would also like to point out that — Somewhere in that he just said the opposite of what I read? Correct. The employer carrier accepted this case as compensable and paid benefits for five months. When they — That doesn't matter. That he was disabled for a certain time is not the issue before us. The issue before us is whether there was a prima facie case that he is, at the time he sought these benefits, sufficiently disabled so that he could not do the job that he did before. And if that was so, then whether the ALJ decided. Now, you have just been read a finding that he didn't make out that case. So what is your answer to that? My answer to that is if he did not make out that case, it's solely based upon the opinion of a non-examining physician. I know, but that's a weak argument. If what Judge Nardini just read to you was, in fact, what the adjudicator found, you can't prevail on this appeal. Isn't that right? No, I think that I can prevail on this appeal because there is no question that this man was injured on the job, that he was unable to return to work as a truck driver based upon the opinion of the authorized treating orthopedic spine surgeon. He had a well-documented herniated disc by MRI and EMG, and the only doctor that said he could go back to work is a non-examining physician. Excuse me. What you have to argue is that the prima facie case is sufficiently small that at the prima facie case, the ALJ may not rely on a non-treating physician, but he may only rely on that after when the burden is shifted. Correct. And I'd like to know what cases or case you cite us for the notion that what we have come to hold, perhaps wrongly, about looking at non-treating physicians doesn't apply also at the prima facie case as well as later. That's what you need to show because that's an interesting question. That's one that I, frankly, had never seen before. But whether at the prima facie case would we have come to say about these other physicians can be relied on? I mean, the Oren V. Ashtrew and Lester V. Chatter state that the opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. The non-examining physician is limited to reviewing medical records and choosing which of the examining physician's opinions he agrees with. He's not allowed to create a new and original opinion that is not contained in the reports of the examining physicians, because without examining the patient, he has no foundation for an original opinion. It's this doctor. But let me ask you this. Suppose, let's accept arguendo what you just said, but suppose after, you know, X number of days of testimony, the ALJ is listening to your client and concludes that he's not credible. How can you prevail? That's a good question, Judge. I just want to point out on the credibility issue that my opposing counsel cited four credibility cases for the argument that Well, forget about the cases for a minute. This is just a kind of analytical question. Let's say the judge says he talked about your experiences, you know, after the accident. He talked about this. He talked about that. I don't believe him. Here's the point. Credibility has to go to a core issue like were you injured on the job? My client was injured on the job. No credibility asked about that. Did you have an accident? Why does credibility have to go to a core issue? Credibility has to go to whether a litigant testified credibly. You know, you're experienced trial lawyer. You know that, for example, when jurors are getting charged, the judge said, if you found that, you know, the defendant or whoever the witness testified untruthfully, you're entitled to disregard it all, disregard some, but it's within your province. Well, the point is that credibility can't go to dispute objective evidence. In other words, you cannot fake a large herniated disc pressing on your nerves. There's no way to do it. When you take a picture, it's either there or it's not. You can fake whether it hurts. Someone can come in and present with a certain spinal, you know, and have an extraordinary amount of pain or a lesser amount of pain or whatever in between. Respectfully.  Yes. And it certainly could be the case that doctors could look at an x-ray or an MRI and say, well, there's something there, but I don't know how much it impinges on this person's daily life. The person testifies one way or the other, and the judge says that is flatly incredible. Judge. Let me give you an example. Okay. Hang on. I'm going to give you a hypothetical. A guy comes in. He says, I have this spinal injury, and it hurts so much I can't do anything. And the doctor says, well, I look at the x-ray, and it looks to me like he's disabled. And then the opponent comes in with videotapes of this guy at a bodybuilder gym, and he's dead lifting a 1,000-pound barbell. You know, he's the strong man at the circus, and he's lifting it over his head. He's a crossfit. That would be a great case to throw out. We don't have that here. Hang on. My point is that theoretically, analytically, along the lines of Judge Parker's questions, that is what illustrates the importance of credibility. Okay. And the question is, if the judge determines as a factual matter that someone is lying about whether it hurts and whether it actually impinges their ability to carry out activities of daily living, that is something that is important. That's the kind of thing you see in disability fraud cases all the time, right? I understand. People are out there shoveling a foot of snow, even though their doctor has testified, no, no, no, they're totally disabled. That's what credibility does and must. A hundred percent. I a hundred percent agree with you. Those kind of credibility cases should be thrown out. My client worked for nine-and-a-half years. He loved his job. He was a heavy-duty staff member. Let me just say — No. Counsel, you are now saying that the credibility finding was wrong. I am still obsessed with whether the credibility finding is sufficient to support the ALJ's finding that he has not made out his prima facie case. I don't. That's the issue for me. That is, was there enough evidence, either from the non-treating physician or based on lack of credibility, that a prima facie case was not made out? Because if a prima facie case was not made out, then your client has not met his burden. If a prima facie case was made out, then I would contend that the burden on the other side was not met because the ALJ never discussed driving a truck. So that's the issue. Well, I agree. I agree with Your Honor. And I believe that the prima facie case, which Judge Davis comments upon, is such a small burden on the part of the claimant that he even proved it by just going to the medics. The employer's medics put him on a no-work status and put him in a wheelchair and sent him home to an orthopedic surgeon who also took an MRI and put him on a no-work status. That met the burden right there. I think we now have everybody's argument. Thank you very much. You're welcome. Thank you, Judges. Thank you.